IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HEARTLAND BARGE MANAGEMENT, L.L.C., a Delaware limited liability company,<br><br>　　Plaintiff,<br><br>v.<br><br>RLB CONTRACTING, INC., a Texas corporation,<br><br>　　Defendant. | § § § § § § § § § § § § § § | CASE NO. _____ |

## COMPLAINT

COMES NOW Heartland Barge Management, L.L.C. ("Plaintiff"), by and through its attorneys, and for its Complaint against RLB Contracting, Inc. ("Defendant"), states as follows:

### INTRODUCTION

1. Plaintiff brings this action to recover its damages from Defendant caused by Defendant's breach of a vessel charter for three barges, described further below, for Defendant's failure to pay charter hire fees and failure to pay for repair of damages to the barges at the end of the charter term.

### PARTIES AND JURISDICTION

2. Plaintiff is a Delaware limited liability company located in Columbia, Illinois. Plaintiff's sole member is Heartland Companies, Inc., an Illinois corporation with its principal place of business in Columbia, Illinois. Plaintiff is a citizen of the State of Illinois.

3. Defendant is a Texas corporation with its principal place of business located at Port Lavaca in Calhoun County, Texas. Defendant is a citizen of the State of Texas.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district.

## BACKGROUND

6. On October 31, 2018, Plaintiff and Defendant entered into a Bareboat Charter Agreement (the "Original Charter") for the charter of vessels from Plaintiff.

7. A true and accurate copy of the Original Charter is attached hereto as **Exhibit 1** and incorporated herein by this reference.

8. The term of the Original Charter ended on July 31, 2019 (the "Charter Term"). See Exhibit A to Exhibit 1.

9. On July 19, 2019, Plaintiff and Defendant entered into an Amended and Restated Bareboat Charter Agreement (the "Restated Charter"), which among other things, extended the Charter Term to August 31, 2019.

10. A true and accurate copy of the Restated Charter is attached hereto as **Exhibit 2** and incorporated herein by this reference.

11. On August 30, 2019, Plaintiff and Defendant entered into a Second Amendment to Amended and Restated Bareboat Charter Agreement (the "Second Charter Amendment"), to extend the Charter Term to September 30, 2019.

12. A true and accurate copy of the Second Charter Amendment is attached hereto as **Exhibit 3** and incorporated herein by this reference.

13. On September 27, 2019, Plaintiff and Defendant entered into a Third Amendment to Amended and Restated Bareboat Charter Agreement (the "Third Charter Amendment", and together with the Original Charter, the Restated Charter, and the Second Charter Amendment, the "Charter Agreement"), to extend the Charter Term to October 15, 2019.

14. A true and accurate copy of the Third Charter Amendment is attached hereto as **Exhibit 4** and incorporated herein by this reference.

15. Under the Charter Agreement, Plaintiff chartered three vessels named *HBM011*, *HBM014*, and *HBM015*, as more particularly described on Exhibit A to the Charter Agreement (collectively, the "Vessels").

16. At the beginning of the charter, the Vessels were inspected under the joint on-charter survey and accepted by Defendant.

17. Defendant took possession of the Vessels at Laplace, Louisiana, on November 16 and November 18, 2018.

18. On information and belief, RLB Contracting, Inc. was utilizing the Vessels for a dredging project known as the MVP Phase 2 Bulkhead Dredging Project in Pasadena, Texas.

19. The Charter Agreement required payment of monthly Charter Hire for each of the Vessels. See Exhibit A to Exhibits 1, 2, 3, and 4.

20. On October 15, 2019, the Charter Term under the Charter Agreement, as amended, ended.

21. At the end of the Charter Term, Defendant owed Plaintiff $61,306.00 for Charter Hire.

22. At the end of Charter Term, a joint survey of the Vessels determined that the Vessels had sustained significant damage while Defendant was in possession of the Vessels that required repairs to be completed.

23. Defendant had several additional independent surveys performed on the Vessels, and on information and belief, the damage and need for repairs were confirmed.

24. The Vessels were delivered to Intercoastal Marine Repair, Inc. to complete the repairs.

25. Defendant represented that the charges for the repairs to the Vessels required under the Charter Agreement were covered by insurance and that Defendant had made a claim for payment of the repairs to the insurance company.

26. On information and belief, neither the Defendant nor its insurance company has paid for the repairs to the Vessels.

27. While the Vessels were being repaired, the Vessels remained on charter, and Defendant remained responsible for the Charter Hire under the Charter Agreement (the "Holdover Charter Hire").  *See* Exhibit 3, § 19.1.

28. Plaintiff invoiced Defendant for the Holdover Charter Hire.

29. Defendant did not pay Plaintiff for the Holdover Charter Hire.

30. In March 2020, McCarthy Building Companies, Inc., the primary contractor on the MVP Phase 2 Bulkhead Dredging Project, caused the unpaid balance of the Charter Hire accrued before the end of the Charter Term to be paid to Plaintiff.

31. Defendant still did not pay Plaintiff for the Holdover Charter Hire or the late fees, interest, and the fees for the survey to determine the condition of the Vessels.

32. In April 2020, the repairs to the Vessels were completed.

33. On April 15, 2020, Vessel *HMB015* was taken off charter and Plaintiff took possession of *HMB015* and had *HMB015* delivered to the location where the Vessels were to be returned by Defendant at the end of the Charter Agreement term.

34. On April 21, 2020, Vessel *HMB014* was taken off charter and Plaintiff took possession of *HMB014* and had *HMB014* delivered to the location where the Vessels were to be returned by Defendant at the end of the Charter Agreement term.

35. On April 28, 2020, Vessel *HMB011* was taken off charter and Plaintiff took possession of *HMB011* and had *HMB011* delivered to the location where the Vessels were to be returned by Defendant at the end of the Charter Agreement term.

36. On April 29, 2020, counsel for Plaintiff sent a letter to Defendant (the "April 29 Letter") demanding payment from Defendant for the Holdover Charter Hire, plus late fees, interest and survey fees.

37. A true and accurate copy of the April 29 Letter is attached hereto as **Exhibit 5** and incorporated herein by this reference.

38. Defendant did not respond to the April 29 Letter.

39. On May 21, 2020, counsel for Plaintiff sent another letter to Defendant (the "May 21 Letter") notifying Defendant that the holdover term ended in April and that the Plaintiff had taken possession of the Vessels, and further demanding payment for the Holdover Charter Hire.

40. A true and accurate copy of the May 21 Letter is attached hereto as **Exhibit 6** and incorporated herein by this reference.

41. Defendant did not respond to the May 21 Letter.

42. To date, Defendant has not paid Plaintiff for the Holdover Charter Hire, late fees, interest, and the surveys conducted on the Vessels incurred following the end of the Charter Term, and Defendant has not paid for the repairs required for the Vessels or for transporting the Vessels to the final delivery location.

43. On June 23, 2020, Plaintiff paid Intercoastal Marine Repair, Inc. $304,419.90 for the repairs required on the Vessels, and Plaintiff paid Zito Fleeting, Inc. $11,959.65 for shifting and fleeting services to move the Vessels to the final location.

## COUNT I
## (BREACH OF CONTRACT)

44. For paragraph 44 of the Complaint, Plaintiff incorporates each of the facts stated in paragraphs 1 through 43 as if fully set forth again.

45. The Charter Agreement, as amended, constitutes a valid and binding contract, enforceable against Defendant in accordance with its terms.

46. Plaintiff performed its obligations under the Charter Agreement by delivering and providing the Vessels to Defendant and all conditions precedent to Defendant's performance were satisfied.

47. The Charter Agreement provides as follows:

> Any damage or deterioration found by the Off-Charter survey to be beyond normal wear and tear shall be repaired at the expense of Charterer. Charterer shall be liable for all expenses necessary to restore the Vessel(s) to the condition required by this Article and Section 7.3 and shall pay to HBM additional Charter Hire at the rate then payable under Section 3.1 of this Agreement or each day during the time such repair or restoration is being affected as liquidated damages for delay.

Exhibit 2, § 19.1.

48. Defendant breached the Charter Agreement by failing to pay Plaintiff for the Holdover Charter Hire while the Vessels were being repaired.

49. Defendant's failure to pay Plaintiff for the Holdover Charter Hire while the Vessels were being repaired caused an injury to Plaintiff. The harm caused to Plaintiff as a result of Defendant's failure to pay is equal to the Charter Hire amount, which as of April 30, 2020, totaled $205,449.73, consisting of $174,200.00 for Charter Hire, $15,903.98 for interest, and $12,210.75 for late charges and $3,135.00 for the off-charter survey fees. In addition, interest on the Charter Hire continues to accrue.

50. Defendant also breached the Charter Agreement by failing to pay for the repairs to the Vessels based on the survey completed at the end of the term of the Charter Agreement.

51. Defendant failed to pay for the repairs to the Vessels and for shifting the Vessels to their final delivery location. Plaintiff was forced to pay for the repairs and fleeting of the Vessels that are required to be paid by Defendant. As a result of Defendant's failure to pay for these charges Plaintiff was harmed in the amount of $304,419.90 for the repairs and $11,959.65 for the fleeting charges to deliver the Vessels to the final location.

52. The Charter Agreement also provides that Plaintiff is entitled to recover its reasonable attorneys' fees and expenses relating the collection of the obligations under the Charter Agreement. See Exhibit 2, § 18.4. Plaintiff has and will continue to incur attorneys' fees in pursuing collection of those obligations.

WHEREFORE, Plaintiff Heartland Barge Management, L.L.C. respectfully requests that the Court enter judgment in favor of Plaintiff against Defendant RLB Contracting, Inc. awarding Plaintiff damages in an amount equal to $205,449.73, plus prejudgment interest continuing to accrue, awarding Plaintiff damages in an amount of $316,379.55 for the repair and fleeting charges paid by Plaintiff, awarding Plaintiff's attorneys' fees and expenses incurred in collection of the obligations under the Charter Agreement, and that the Court grant such other and further relief as is just and appropriate under the circumstances.

## COUNT II
## (UNJUST ENRICHMENT)

53. For paragraph 53 of the Complaint, Plaintiff incorporates each of the facts stated in paragraphs 1 through 43 as if fully set forth again.

54. Plaintiff provided a benefit to Defendant by providing possession of the Vessels in good condition.

55. Plaintiff also provided a benefit to Defendant by paying for repairs on and fleeting for the Vessels as a result of Defendant's damage of the Vessels.

56. Defendant enjoyed the possession of the Vessels while the repairs were being completed to the detriment of Plaintiff.

57. Defendant also enjoyed the benefit from the payment by Plaintiff for the repairs and fleeting charges.

58. It would be unjust and inequitable to permit Defendant to retain those benefits without payment to Plaintiff for the possession of Vessels and the repair and fleeting charges paid by Plaintiff on Defendant's behalf.

59. Defendant should be required to pay $174,200.00 for possession of the Vessels while they were being repaired which is equal to the daily rate agreed to by the parties under the Charter Agreement for the number of additional days that Defendant has not paid Plaintiff and $316,379.55 for the repairs and fleeting costs that Plaintiff paid for Defendant.

WHEREFORE, Plaintiff Heartland Barge Management, L.L.C. respectfully requests that the Court enter judgment in favor of Plaintiff against Defendant RLB Contracting, Inc. awarding Plaintiff $490,579.55 to compensate Plaintiff for the unjust enrichment of Defendant, and that the Court grant such other and further relief as is just and appropriate under the circumstances.

## COUNT III
## (NEGLIGENCE)

60. For paragraph 60 of the Complaint, Plaintiff incorporates each of the facts stated in paragraphs 1 through 43 as if fully set forth again.

61. Defendant had a duty to Plaintiff to protect Plaintiff's Vessels from damage in excess of normal wear and tear while Defendant was using the Vessels under the Charter Agreement, and to return the Vessels to Plaintiff in undamaged condition.

62. As determined by the survey conducted at the end of the term of the Charter Agreement, Defendant failed to prevent damage, in excess of normal wear and tear, while using Plaintiff's Vessels.

63. As a result of the damaged condition of the Vessels caused by Defendant, the Vessels had to be repaired.

64. As a result of the damaged condition of the Vessels, Defendant deprived Plaintiff of possession of the Vessels until April 2020.

65. Defendant's conduct caused damage to Plaintiff's Vessels and Plaintiff, in the amount of $304,419.90 for the repairs completed by Intercoastal Marine Repair, Inc.

66. Plaintiff also had to pay $11,959.65 for fleeting charges, completed by Zito Fleeting, Inc., to move the Vessels.

67. Defendant's conduct also caused damage to Plaintiff by depriving Plaintiff of possession of the Vessels while the Vessels were being repaired in the amount of $174,200.00, which is equal to the Charter Hire that should have been paid under the Charter Agreement for that period.

WHEREFORE, Plaintiff Heartland Barge Management, L.L.C. respectfully requests that the Court enter judgment in favor of Plaintiff against Defendant RLB Contracting, Inc. awarding damages to Plaintiff of no less than $490,579.55, plus such other amounts as may be proved at trial, and that the Court grant such other and further relief as is just and appropriate under the circumstances.

Respectfully submitted,

By: */s/ Katharine Battaia Clark*

**Katharine Battaia Clark**
Texas State Bar No. 24046712

**THOMPSON COBURN LLP**
1919 McKinney Ave., Suite 100
Dallas, Texas 75201
Tel Phone: (972) 629-7100
Fax: (972) 629-7171
KClark@ThompsonCoburn.com

**Brian W. Hockett**
(pro hac vice being filed)
**THOMPSON COBURN LLP**
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri 63025
Tel Phone: (314) 552-6461
Fax: (314) 552-7000
bhockett@thompsoncoburn.com

ATTORNEYS FOR PLAINTIFF